Anita Pearce, a feme sole, demands in this action damages for accidental injuries allegedly suffered by her while riding as a guest passenger in an automobile driven by T.G. Edwards and belonging to the latter's employer, the Dunnam Motor Company.
Only the United States Fidelity Guaranty Company, an insurance company that had issued a policy covering the vehicle, is made defendant.
From a judgment sustaining defendant's exceptions of no cause and no right of action, directed to the allegations of the petition, plaintiff is prosecuting this appeal.
In support of the first ground of attack made under the named exceptions, defendant, as shown by the brief of its counsel, argues:
"Plaintiff has sued only the United States Fidelity Guaranty Company. She alleges Mr. Edwards was an employee of the Dunnam Motor Company, a partnership composed of Marcus Dunnam and C.L. Haynes; that Marcus Dunnam died during September, 1938, or more than one year before this accident is alleged to have occurred, and that the Dunnam Motor Company sold its Ford Agency in November, 1938, retaining its open accounts. Under the above alleged facts and under Articles of the Civil Code * * * the alleged partnership was, ipso facto, dissolved on the death of Mr. Dunnam more than a year before the occurrence of this accident. Necessarily, if this defendant had been the insurer of the liability of that Partnership an insurance policy covering its liability could not cover an accident occurring through the act of an employee of the heirs or administrator of one deceased partner who are not alleged to have entered into a new partnership."
When consideration is given to certain allegations of the petition not referred to by defendant, it is clear that this contention is untenable. The petition specifically recites that the Dunnam Motor Company, Edwards' employer, was insured by defendant; and that the policy of insurance, affording appropriate coverage on the offending vehicle, was in full force and effect prior to and on the date of the accident. This was sufficient for the purpose of pleading; and, with respect to this, the matter of whether the Dunnam Motor Company at the time was a trade name of a partnership or of some other arrangement of persons conducting the business in which Edwards worked is of no moment or importance.
Next defendant urges that "plaintiff has alleged no facts or circumstances constituting *Page 745 
fault (or) negligence under our law as being the proximate cause of her injury."
The petition, respecting this proposition, contains the following recitals:
"Petitioner shows that en route to Natchitoches, Louisiana, the Ford Coupe, described in Paragraph 8, in which she was riding, and which was being driven by T.G. Edwards, the employee of Dunnam Motor Company, overturned one or more times causing her to sustain severe bodily injuries which will be hereinafter set out. Petitioner avers that while they were traveling on Highway # 20, about two or three miles north of Monette Ferry in Natchitoches Parish, Louisiana, the car in which she was riding, and which was being driven by T.G. Edwards, swerved from one side of the road to the other going back and forth at least twice and finally overturned. Petitioner shows that just prior to the time the car overturned it was being driven by Edwards on the right side of the highway, a graveled road about 18 feet wide, at a speed of between 30 and 35 miles per hour; that suddenly and without any warning to her, the car veered sharply to the left side of the road, either being steered there by the said Edwards or because of his want of skill as a driver, the reason for which plaintiff has no exact knowledge; that said car went so far to the left that it almost ran into the ditch on the left side of the highway.
"Petitioner shows that as the Ford Coupe approached the ditch on the left side of the highway, said Edwards, in his effort to right the car, and to drive it back into the roadway, jerked the steering wheel sharply and forcibly, with the result that the car cut suddenly and sharply across the road to the right, to the extent that one or more of the wheels ran off of the gravel roadway onto the shoulder and partially, at least, onto the incline that leads to the ditch; that the said car continued down the road on the extreme right side with one or more wheels off the highway and finally turned over in the ditch to the right.
"Petitioner avers that the road on which she and Edwards were traveling was a well kept graveled highway, in good condition with little or no loose gravel about; that it was straight, or practically so, and was dry, there having been no rain or excess moisture to make it wet or slippery. She shows further that the day was bright and clear, the accident having occurred between 8:30 and 9:00 in the morning.
"Petitioner shows that the said Edwards, in his effort to steer the car back onto the roadway from the extreme right side, where it was just before it turned over, pulled and jerked the steering wheel suddenly and sharply to the left with the result that the car turned over two or more times. She shows that the car traveled a distance of approximately one hundred and twenty-five feet from the point where it first started swerving to the left until it finally turned over, and that at no time did the said Edwards apply the brakes on the car in an effort to stop it, nor did he ever remove his foot from the accelerator. Petitioner avers, on the contrary, that said Edwards continued to keep his foot on the accelerator and continued to feed the car fuel, thus maintaining at all times a speed of approximately 30 to 35 miles an hour.
"Petitioner shows that the way to stop an automobile is either to apply the brakes or cut off the fuel supply, and that had Edwards done either of these things the car would not have turned over as it did. She shows that the said Edwards was guilty of negligent, careless and faulty driving in steering the car back and forth across the road as he did, in not applying the brakes and in that he failed to remove his foot from the accelerator."
Conceding for the sake of argument that the quoted allegations of fact disclose no specific negligent act on the part of Edwards, they are sufficient, we think, to render applicable here the doctrine of res ipsa loquitur and to sustain the existence of both a right and a cause of action in plaintiff with reference to the question of the driver's negligence.
The facts developed on the trial of the merits of the case of Lawson v. Nossek, 15 La.App. 207, 130 So. 669, 671, revealed a situation almost identical to the one which plaintiff alleges; and therein, in affirming a judgment which awarded damages to the injured claimant, this court had the following to say:
"The doctrine of res ipsa loquitur, which means `the thing speaks for itself,' finds frequent application in automobile accident suits. Under this doctrine or rule, when a thing or instrument which causes the accident and injury is shown to be under the control and management of a person who owes a duty to another, and where it is shown that the accident is such as does not happen in the ordinary course of events, if *Page 746 
those who control such instruments use due care, the presumption arises that the accident was caused by want of due care. But that presumption is not conclusive. In such cases negligence may be inferred from the fact itself, and the rule res ipsa loquitur applies. So that, in automobile accident suits based upon negligence, the plaintiff makes out a prima facie case when he shows that the machine which caused the injury was under defendant's control, that the accident and injury did take place, and that the event would not have happened in the ordinary course of events, if due care had been taken by the driver. The burden is then shifted to defendant to make explanation to show that ordinary care was exercised."
According to the petition in the instant case Edwards was driving his machine during a bright clear morning at the not excessive rate of 30 to 35 miles per hour. The road was wide, straight, graveled, dry, and in good condition. The car swerved from side to side, still traveling at the mentioned rate of speed, and it overturned after proceeding 125 feet from the point where the swerving commenced. An accident of the description given, it seems, would not have occurred in the ordinary course of events if due care had been employed. Hence, there arises a presumption of negligent driving; and defendant carries the burden, under the mentioned doctrine, of showing that Edwards was acting with the required diligence and attention.
The case of Lewis v. Jeffress, La.App., 3 So.2d 477, cited and relied on by defense counsel and in which we sustained an exception of no cause of action directed to the petition, is readily distinguishable from the present controversy. Therein we observed that the only allegation of the petition on which the claimant could hope to sustain his suit, it being that defendant failed to straighten his car in making the S curve, was too vague and indefinite to be considered as an allegation of negligence. Negligence was not even implied by the stated charge. In this cause a strong inference of it can be drawn from the factual situation detailed in the petition.
Lastly defendant contends that Edwards at the time of the accident was not driving the car in the course of his employment, he being then en route to Natchitoches to attend a funeral, a purely personal errand. In this connection it is appropriate to remark, and this plaintiff's counsel concede, that the insurance contract does not contain the usual omnibus clause, and that for the defendant insurer to be responsible in damages the accident must have happened under circumstances that render the employer liable.
The allegations of the petition appropriate to this contention read as follows:
"Petitioner shows that T.G. Edwards, whose christian name is unknown to petitioner, who is also a resident of Rapides Parish, Louisiana, was likewise retained in the employ of Dunnam Motor Company during the liquidation of its affairs; that his duties consisted largely of making collections from parties owing money to the company, in repossessing automobiles, and assisting in the general liquidation of the business. Petitioner shows that said Edwards was required, in connection with his work, to travel in and about Alexandria, and to other places in the State of Louisiana.
"Petitioner shows that in connection with his work, and particularly in order to enable him to travel about the Parish of Rapides and State of Louisiana, said Edwards was furnished an automobile by the Dunnam Motor Company; that he drove it constantly all with the knowledge and approval of the Dunnam Motor Company; that on and prior to October 17, 1939, said Edwards customarily used a Ford Coupe, motor # 664,967, which automobile belonged to the Dunnam Motor Company.
"Petitioner avers that W.A. Hayne, a brother of C.L. Hayne, one of the partners in Dunnam Motor Company, as aforesaid died at his home in Natchitoches on October 16, 1939. Petitioner shows that she and T.G. Edwards, both employees of Dunnam Motor Company, desired to go to Natchitoches for the funeral services to be held there; that they left Alexandria on October 17, 1939, driving to Natchitoches to attend the services, and for other purposes which will be hereinafter set out.
"Petitioner shows, in addition to driving to Natchitoches for the purpose of attending the funeral services for W.A. Hayne, that T.G. Edwards intended, on the same trip and at the same time, to do certain work for the Dunnam Motor Company; that there were several parties who live in the vicinity of Boyce, La., and Flora, La., and in other places between Natchitoches and Alexandria, who owed the Dunnam Motor Company money either on open account or representing payments due *Page 747 
on automobiles sold to them; that said Edwards intended, on the trip in question, to see several of these people in an effort to make collection of the amount due the Dunnam Motor Company."
The trial judge, entertaining the view that these allegations disclose an undertaking by Edwards of a purely personal nature at the time of the accident, found the last stated ground of attack to be meritorious; and, by reason of this finding, he sustained the exceptions of no cause and no right of action. In the course of his written opinion, which is in the record, he observed:
"As courts take judicial cognizance of the facts of geography, we can supplement the pleadings from the State official road map, which shows that on Highway 20 en route from Alexandria to Natchitoches at the locus of the accident two or three miles North of Monette Ferry, the Edwards car had passed Boyce but still had not reached Cypress, 13 miles south of Natchitoches where a road turns off to the west of Flora, four miles from Cypress. Flora not being reached en route to Natchitoches from Alexandria on Highway 20, it not being on that highway.
"It not being alleged that the party was en route to Flora, it is apparent that at the time of the accident the objective was Natchitoches and the funeral. Flora and Boyce necessarily to be visited on company business on the way back.
* * * * *
"It is true that Edwards started out with the intention of doing two things: attending the funeral and collecting accounts. These purposes are separate and distinguishable, as they have different geographical objectives. It being admitted that the accident occurred while en route to the personal objective, Edwards did not enter his employer's service until the funeral at Natchitoches was over and he had started for Flora or Boyce to make collections for his employer."
The averments of the petition, according to our appreciation of them, do not definitely show that Edwards' journey from Alexandria north to Natchitoches was for the sole purpose of attending the funeral and that his contemplated business transactions were not to occur until after his departure from the last named municipality. Neither does plaintiff concede that the trip was so planned. On this score, her counsel state in their brief that:
"The purposes of the trip, though separate, did not have different geographical objectives, and we certainly do not admit, nor concede that Edwards was to first enter his master's service at the end of the funeral services, and when he started for Flora and Boyce. Such a finding by the trial judge, is at variance with our ideas, and at variance with the allegations of our petition."
It appears from the quoted allegations that the trip had a dual purpose. Edwards was to attend the funeral services in Natchitoches, and, also, he was to attempt the collecting of accounts for his employer from "several parties who live in the vicinity of Boyce, La., and Flora, La., and in other places between Natchitoches and Alexandria * * *." The accident occurred before Natchitoches was reached, its locus being a number of miles south of that city. It may be, the allegations being possible of this interpretation, that some of the debtors, who lived between Natchitoches and Alexandria, resided on the non-negotiated stretch of Highway 20 and would have been contacted before Edwards' arrival in Natchitoches had not the accident happened.
Of course, the averments presently under discussion are rather general and somewhat vague; however, they do admit of the construction above given. Defendant had the right, by means of the plea of vagueness, to obtain from plaintiff particulars and more definite information regarding the trip. But it did not do so. It chose, instead, to employ exceptions of no cause and no right of action. These cannot be made to fill the office of an exception of vagueness. Dronette v. Meaux Brothers, 156 La. 239, 100 So. 411. Neither can a defendant, on a trial of the merits of a case, obtain a dismissal of the suit by objecting to the admissibility of the evidence on the ground that the pleadings are too vague and indefinite to admit of proof, where it fails to take full advantage of an exception of vagueness before issue is joined. Hudson v. Louisiana Railway Navigation Company, 4 La.App. 248; Murff v. Louisiana Highway Commission, La.App., 146 So. 328; Foster Glassell Corporation v. Ackel, La.App., 166 So. 885.
If Edwards' plans provided for his attending the funeral in Natchitoches and also his making collections before arriving *Page 748 
there, and we hold that plaintiff's pleadings can be construed as showing that they did, both his employer and the defendant insurer would be liable for injuries caused by his asserted negligent driving.
It is said in 35 American Jurisprudence, verbo Master and Servant, Section 553, that:
"An employee may abandon his employer's service permanently or temporarily, and while he is acting for himself, or is engaged in an independent errand of his own, the employer is not responsible for his conduct. The mere fact, however, that at the time of his tortious act, the employee is combining the business of his master with his own business or pleasure does not necessarily relieve the employer of liability. In many instances where the employee was acting in behalf of his employer as well as himself, the employer has been held to be chargeable with liability for the consequences to third persons of the tortious conduct of the employee during that time."
In 39 Corpus Juris, verbo Master and Servant, Section 1501, we find:
"If the servant in going extra viam is really engaged in the execution of the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own. To exonerate the master from liability, it is essential that the deviation or departure should be for purposes entirely personal to the servant."
Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 5, § 3034, states the rule as follows:
"The fact that the servant is also serving his own personal ends does not necessarily place him beyond the scope of his employment, if in so doing he is also about his master's business. In other words, the fact that the servant personally receives a benefit from his acts, does not relieve his master from liability for the servant's negligence.
"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it."
No cases in the jurisprudence of this state having an identical factual situation have been called to our attention and we know of none. However, the opinions in the following named Louisiana authorities contain language tending to support the above announced doctrine. Krousel v. Thieme, 13 La.App. 680, 128 So. 670; Cado v. Many, La.App., 180 So. 185; Duffy v. Hickey,151 La. 274, 91 So. 733.
The work of Edwards, according to the petition of plaintiff, required his traveling over the state. The making of collections while on his way to Natchitoches, a definite part of his duties, was not merely incidental to the travel; to the contrary, it was an important reason for the trip.
If Edwards had purposed to make no collections until after his attending the funeral services and his departure from Natchitoches, the trial judge's conclusion, under the authorities which he cites, would have been eminently correct. The master's business, in that situation, would not have been engaged in until subsequent to the commencement of the return journey to Alexandria. But such is not the case here, as we appreciate the pleadings and as above shown.
Applicable to the present controversy is the following expression found in previous opinions of this court:
"The petition in this case does not clearly disclose lack of right or cause of action in plaintiffs, and this being true, doubts thereon should be resolved in favor of the sufficiency of the petition. In so holding, it is not our purpose to prejudge the case on its merits to any extent."
The judgment, in our opinion, is erroneous; therefore, it is now reversed and set aside, the exceptions of no cause and no right of action are overruled, and the case is remanded for further proceedings according to law. Costs of this appeal shall be paid by defendant, while all other costs shall await the final determination of the litigation.
DREW and TALIAFERRO, JJ., concur. *Page 749