Defendant is appealing from the verdict of the jury and judgment thereon awarding plaintiff $12,520.95, and the intervener $1,410.50, to be paid out of the award to plaintiff.
There is no contention as to the right of intervener to be paid in the event the judgment in favor of the plaintiff is affirmed or any award to that extent is made in his favor.
On or about October 4, 1941, between 8 o'clock p.m. and 9 o'clock p.m., plaintiff and one John Mercer Sentell, Jr., were involved in an automobile accident near Oil City, in Caddo Parish, Louisiana, as a result of which plaintiff's automobile was so badly damaged as to amount to a total loss, and he sustained severe injuries. He alleges that the accident was caused solely by the negligence of said Sentell, and he specifies such negligence as follows:
(a) He was under the influence of intoxicating liquors;
(b) That he did not have his car under proper control;
(c) That he did not keep the proper lookout;
(d) That he was driving on the wrong side of the highway coming directly towards your petitioner, as above set forth;
(e) That he was driving at a reckless rate of speed, which your petitioner, on information and belief, alleges was in excess of 60 miles per hour.
In original and supplemental petitions, he demands judgment for $17,585.95, itemized as follows:
Loss of automobile $ 800.00 Doctors and hospital bills 484.95 Dentist Bill 800.00 Loss of earnings 1,000.00 Loss of future earning capacity 4,000.00 Injuries to his head, face, and hearing 7,000.00 Injuries to his kidneys 1,000.00 Injuries to his nervous system, etc. 1,500.00 Pain and suffering, (past, present, and future) 1,000.00 ---------- Total $17,585.95
This suit was filed May 5, 1945, some three and one-half years after date of the accident. In order to negative prescription plaintiff alleged that on June 4, 1942, he filed suit No. 85,162, on the docket of First Judicial District Court, against the said Sentell for damages caused by Sentell's negligence which suit is still pending. That on May 20, 1945, he discovered for the first time that Sentell was employed by the Shreveport Packing Company, and was on an errand and mission for said company at the time of the accident. That Sentell and the Packing Company are joint tort-feasors and solidary obligors, and the interruption of prescription as to Sentell interrupted the running of prescription as to this defendant.
After the trial of Suit No. 85,162 against Sentell, which has not yet been decided, the plaintiff undertook by supplemental petition to implead the Shreveport Packing Company in that suit as a defendant. But on objection that the supplemental petition came too late after the trial of the case, and that it changed the issues, it was disallowed.
The present suit was first met with a plea of one year prescription, based upon Article 3536, R.C.C. This plea was overruled. Defendant then filed a plea in bar and a plea of vagueness. The plea in bar is leveled at the fact that in the original suit against Sentell, no claim was made for loss of the automobile and only $300 claimed for dental bill, and that in electing to hold Sentell for only part of the damage he is barred from asserting his claim for damages against the Packing Company for damages he is seeking to collect *Page 619 
from Sentell. The plea of vagueness was answered by a supplemental petition. The plea in bar was overruled.
Defendant then answered, admitting that the accident occurred and that Sentell was employed by it on October 4, 1941. It admitted the filing of suit No. 85,162 on June 4, 1942. All of the other allegations of the petitions on which plaintiff seeks to recover are denied, including the allegation that Sentell was engaged in the course and scope of his employment at the time of the accident. It is alleged affirmatively that the collision was due to the negligence and fault of the plaintiff as follows:
(1) That he was driving his car at the excessive rate of speed of 50 or 60 miles per hour, which was in excess of the speed limit on the highway at the point of the collision;
(2) That he was driving his car upon his left side of the road;
(3) That he, just before the cars met, swerved to his left, into the car of John Mercer Sentell, Jr.
(4) That he, after realizing that a collision was imminent, could have avoided the same by pulling off the road, but he failed to do so; that he had the last clear chance to avoid the accident and failed to act.
Defendant sought to call Sentell to indemnify it for any loss it might sustain. Exception of no cause and no right of action to this call in warranty was sustained and that phase of the case dismissed.
The record in this case discloses by a clear preponderance of the evidence that the proximate cause of the accident was the negligence of Sentell. Specifically, the evidence establishes that at the time of the accident, Cox was driving north on the paved highway, the concrete part-of which is 22 feet wide with wide sloping shoulders on each side. That he was driving on his right side of the highway with his lights burning and at a speed not in excess of 45 miles per hour, and that Sentell was driving south, meeting Cox, and that when he was some 100 feet or 200 feet away from Cox, he pulled his car over on his left-hand side of the highway, and that Cox slowed his car down as much as he could and put his two right-hand wheels off of the concrete on to the shoulder of the road. There is a slight curve in the road at this point, but it did not prevent the driver of either car from seeing the other car approaching. But, of course, on account of darkness, neither driver could see inside the car of the other.
Defendant, in argument and brief, contends that inasmuch as Cox admitted that he saw Sentell driving over into his lane of travel when he was from 100 to 200 feet away, he should have driven his car further to the right and even off of the concrete part of the highway onto the shoulder, and that he could have, by so doing, avoided the accident and resulting injury; that he had the last clear chance to avoid the accident, and therefore is not entitled to recover damages.
[1] We had occasion to examine the jurisprudence on the subject of the last clear chance in the recent case of Howze v. Hollandsworth, La. App., 26 So.2d 381, where many of the cases on this subject are discussed. Under the facts disclosed by the record in this case, we are of the opinion that plaintiff cannot be denied recovery on the contention that he had the last clear chance to avoid the accident and resulting injury.
It seems clear to us that the plaintiff is entitled to judgment in some amount against the defendant unless either the plea of prescription or the contention that at the time of the accident and injury Sentell was not acting in the course and scope of his employment with defendant is sustained. We have concluded to discuss the last defense first. If we sustain that defense, the plea of prescription need not be passed on.
The record in this case discloses that Sentell had been employed by defendant at a monthly salary from about 1939 to and including the date of the accident. His duty was to buy cattle for the defendant, and in carrying out this duty he attended cattle auctions at various places, including Texarkana, Ark. According to Mr. Dickson, manager of defendant company, Sentell was more or less on his own. *Page 620 
He was not given directions as to what route he should take in going to the various auctions. He was furnished by defendant a car to drive but at times he drove his own car. On the day of the accident he was driving a Buick automobile that belonged to him.
Whenever Sentell used his own car, the company furnished him gasoline and he had filled the tank of the car with gasoline at the plant before leaving for Texarkana.
Several days before the accident Sentell and a friend of his, named Ernie Rogers, made an arrangement for Sentell to pick Rogers up at his home in what is called Hollywood, just outside of and southwest of the city of Shreveport, to accompany him to Texarkana. Rogers, until a short time before the date of the accident, had managed the Texarkana auction and knew the people there, and the record discloses that he was very friendly with Sentell and had helped him in buying cattle on other occasions, or at least Sentell says he had taken Rogers' advice at times. It is not shown that he helped him any on the day of the accident. This may explain why Sentell was taking him along that day. It is not shown that defendant had any knowledge of the relations between Sentell and Rogers.
Some time during the forenoon of October 4, 1941, Sentell drove to the home of Rogers, picked him up and took him to Texarkana with him. After the auction was over, about 6 o'clock in the afternoon, they visited with the people who operated the auction and had something to eat at a restaurant, and then left to return to Shreveport, first to Ernie Rogers' home, and then to Sentell's home, which is some six miles north of the city of Shreveport on Highway 71.
It is the contention of defendant that at the time of the accident Sentell was on his way to take Rogers home, therefore had deviated from the most direct route to his home, and for that reason was not on any business for his employer, but was on a private mission of his own, taking Rogers home.
The record discloses that there are two routes from Shreveport to Texarkana, one being highway 71 and the other highway 8. It is shown that the route over highway 71 is some ten miles shorter than the other route, and as Sentell's home is some six miles north of Shreveport on Route 71, the distance from Texarkana to his home over highway 71 is some 23 miles shorter than the route he was using at the time of the accident. (The record discloses that some ten miles of the highway 71 was at that time a gravel road, the other part of the road being paved.)
Highway 8 at that time was paved the entire distance. It was probably just about as near to go from the home of Ernie Rogers to Texarkana over highway 8 as over highway 71. Anyway, that is the route taken by Sentell on the trip to Texarkana. It is also the route that he selected for his return trip for the purpose of leaving Rogers at his home.
Sentell had visited the auction before the visit of October 4, 1941. He testified that he used highway 71 when leaving from his home to go to Texarkana, but that if he left from the plant of the packing company, he used the other route. He also testified that if he had been going directly home on the date of the accident, he would have gone down highway 71 for the reason that it is a shorter distance.
[2] After careful study of the facts of this case as disclosed by the record, and of the authorities cited by both plaintiff and defendant, we have reached the conclusion that at the time of the accident Sentell was on a private mission of his own, not engaged in the course and scope of his employment, and that for this reason defendant in this case is not liable. It is probable that if the accident had occurred after Sentell had delivered Rogers to his home and was on the way to his own home, there might be liability.
In Vol. XIV, Tulane Law Review, 72-81, is an able discussion by Mr. Hollingsworth B. Barrett of the Shreveport Bar, of the doctrine of respondeat superior, titled "The factor of route in the doctrine of re-entry in Louisiana", in which he *Page 621 
cites and explains many of the cases bearing on the question to that date (December, 1939). We cite the article and the cases without quotation, as authority for the conclusion we have reached.
Other cases decided since include Pearce v. United States Fidelity Guaranty Co., La. App., 8 So.2d 743, where an exception of no cause and no right of action had been sustained in the District Court. The exception was overruled by the Court of Appeal, Second Circuit (Judge Hamiter). The case never came back on appeal again. So far as we see, this case is of no importance here, other than it cites interesting authority.
Braud v. Vinet et al., La. App., 5 So.2d 200, is authority for holding that if an employee deviates momentarily from his employment to go on some mission of his own, or to do something that is not connected with his work, and during such deviation, injury is caused by employee's fault, employer is not answerable, since employee is beyond the course and scope of his employment.
The case of Kruckeberg v. Great Atlantic Pacific Tea Co., La. App., 13 So.2d 747, appears not to have application to the facts of the case under consideration. The employee's work in that case was entirely in the store as a butcher. He was on his way, in his own car, to attend an instructional meeting, after working hours. These meetings were held for the benefit of the employer and its employees. The employees were not required to attend these meetings. It was held that employee was not acting within course and scope of employment.
One other case, Great American Indemnity Co. v. Landry Stores, La. App., 177 So. 405, has been cited. In that case it was shown that the employer instructed the truck driver not to make further deliveries during a storm. He became apprehensive about the safety of his mother and took the truck without the knowledge of his employer to go to see about her. Employer held not liable for driver's negligence under respondeat superior doctrine even if driver had made a delivery before accident and was intending to make another delivery after visiting his mother, since there had been a departure from duty which had not been resumed.
For these reasons the judgment appealed from is reversed. The demands of plaintiff and of intervener are rejected, and the suit dismissed at the cost of plaintiff.