J^CLARENCE E. McMANUS, Judge.
In this matter, we affirm the summary judgment granted by the trial judge in favor of Third-Party Defendant, Appellee Mitsubishi Motor Sales of America, Inc.
STATEMENT OF THE CASE WITH FACTS
The matter was instituted on May 19, 1999, with a Petition for Damages filed by Keith Willis. This original petition named as Defendant Royal Imports, Inc., and alleged what Willis characterized as.a redhi-bitory defect found in a 1997 Montero Sport Utility Vehicle Willis had purchased from Royal. The petition alleged that although Willis had intended to purchase a vehicle with a V-6 engine, and had paid the purchase price for such, Royal had sold him instead a 4-cylinder model.
Royal responded to the suit with an Answer, Reconventional Demand and *954 Third Party Demand, which was filed on July 21, 1999. As Third-Party Defendants, Royal named, among several other parties, Mitsubishi Motor Sales of America, Inc., and Jeff Payne Motors. The third-party demand against Mitsubishi sought a seller’s indemnity against a manufacturer, and was based on Royal’s allegation that it was a misleading insignia — a V-6 logo, placed on the vehicle by Mitsubishi — that created the defect in the vehicle which exposed Royal to liability.
Mitsubishi initially entered a general denial, then, on March 2, 2000, filed a Motion for Summary Judgment seeking to have Royal’s suit against them dismissed. The | ^following facts regarding the troublesome logo are taken from exhibits filed with the parties’ pleadings on the motion.
Mitsubishi filed, along with their motion for summary judgment, an affidavit executed by Gary R. Watson, a salesman/buyer for Jeff Payne Motors, Inc., in which Watson stated that he had bought the Montero from Jazzland Lincoln-Mercury. Watson stated that when Payne in turn sold the vehicle to Royal, he had informed them that the 4-cylinder model displayed V-6 markings. Watson’s affidavit stated that Royal’s used car manager, Joe Sli-pher, had “acknowledged” this fact at the time of this sale.
An affidavit executed by Slipher himself included an admission that he had been aware that the vehicle had a V-6 emblem though it was actually a 4-cylinder model.
Attached to Royal’s Opposition to the Motion for Summary Judgment was a copy of a letter from Albert Jackson, the Royal salesman who had sold the car to Willis, in which Jackson stated that while the vehicle had a 4-cylinder engine, the front grille of the Montero displayed a V-6 emblem.
The Motion for Summary Judgment was argued on May 22, 2000; at the conclusion of the hearing the trial judge ruled in Mitsubishi’s favor. A written judgment was signed on June 12, 2000, dismissing Royal’s third-party demands against Mitsubishi.
A Motion for New Trial, or, Alternatively, Annulment of Judgment, was denied on December 6, 2000. Royal timely filed a Motion for a Devolutive Appeal.
Finally, we note that the record contains a motion to dismiss Willis’s action against Royal (and Royal’s reconventional demand against Willis) based on the parties’ having settled the dispute between them.
DISCUSSION
As Royal’s only assignment of error, they argue that “the trial court erred in granting summary judgment, in effect absolving a manufacturer of liability for a misbranded or mislabeled product.” The trial judge did not so “absolve” Mitsubishi. He simply held that Royal cannot recover against Mitsubishi after Royal has knowingly | ¡¡passed the mislabeled vehicle along to their vendee. We agree with this finding. Summary judgment is appropriate in this case.[1]
Because the matter comes to us on review of a summary judgment, we must review the matter de novo, under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Taylor v. Rowell, 98-2865, at 3 (La.5/18/99), 736 So.2d 812, 814; Smith v. Our Lady of the Lake Hosp., Inc., 639 So.2d 730, 750-1 (La.1994); Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342, *955 345 (La.1991); Brown v. Ackel, 00-287, at 5 (La.App. 5 Cir. 7/25/00), 767 So.2d 827, 830.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.[2] LSA-C.C.P. art. 966 A(2); Taylor, 98-2865 at 3, 736 So.2d at 814; Brown, 00-287 at 5, 767 So.2d at 830.
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B;[3] Taylor, 98-2865 at 3, 736 So.2d at 814; Schroeder, 591 So.2d at 342; Brown, 00-287 at 5, 767 So.2d at 830.
A “fact” is “material” if its existence or nonexistence may be essential to a party’s cause of action under the applicable theory of recovery. Smith, 639 So.2d at 751; Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Bauer v. Dyer, 00-1778, at 13 (La.App. 5 Cir. 2/28/01), 782 So.2d 1133, 1140, writ denied, 01-822 (La.5/25/01), 793 So.2d 162.
The law establishing a seller’s right to recover against a manufacturer is found in LSA-C.C. art. 2531—Liability of seller who knew not of [a] defect (emphasis supplied). The article reads, in part, “[a] seller who did not know that the thing he sold [4had a defect is only bound to repair, remedy, or correct the defect.... A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition.”[4] In addition, the comments to the article state, in part, “[u]nder this Article a seller liable for redhibition has an action against his own seller, and other sellers in the chain of title of the thing, even if such sellers are not manufacturers. In such a case the liability of any such seller depends on whether he did or did not know of the existence of the defect at the time of delivery of the thing to his buyer (emphasis supplied).” The principle is very simple: a bad faith seller, a seller who knowingly passes on a defective product, may not recover against sellers backwards in the chain of commerce.[5]
The facts of this matter could not be more uncomplicated. Exhibits filed in this matter, an exhibit filed by Royal, leaves no room to doubt that Royal knew about the defect in the Montero which gave rise to Willis’s original suit.
Royal, not a seller in good faith, may not assert a cause of action against the manufacturer in this instance. And the facts that Royal asserts remain unresolved— facts surrounding how the V-6 logo was placed on the Montero—have no bearing *956 on whether Royal can recover from Mitsubishi. Under Royal’s theory of recovery, these facts are not material.
These things being so, Mitsubishi is entitled to judgment as a matter of law, and summary judgment was correctly granted in this matter.
Therefore, for the above reasons, we affirm the judgment of the district court, with Appellant Royal Imports, Inc., to pay all costs of this appeal.

AFFIRMED.

. We note that this matter touched on some issues not made part of this appeal — we do not address Willis’s knowledge of the defect, nor do we rule on whether the defect would constitute a redhibitory defect. Nor do we discuss or rule on the applicability of LSA-C.C. art. 2531 in cases where a good faith seller has settled a claim.

. LSA-C.C.P. art. 969 disallows summary judgment in some domestic proceedings.

. Language from this section of the article not cited, language regarding service of pleadings, was amended during the most recent legislative session. 2001 La. Acts 771. This matter does not raise any issues regarding the deleted language.

. Though Royal argues that LSA-R.S. 32:1257 is applicable here, the language of the article limits its application to situations in which a franchise agreement between a manufacturer and its licensee is terminated.

.This is not a situation where the seller's inability to claim indemnity arises out of an aggravation of plaintiff's damages resulting from the seller’s bad faith efforts to repair or correct a defect.